# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **MIDCAP MEDIA FINANCE, LLC** | § | |
| | § | |
| **V.** | § | **1:15-cv-0060 AWA** |
| | § | |
| **PATHWAY DATA, INC., et al.** | § | |

## FINDINGS OF FACT AND ORDER

On July 9, 2019, the Fifth Circuit remanded this case for the Court "to determine whether it has diversity jurisdiction. . . ." Dkt. No. 110. In accordance with the Circuit Court's mandate, the parties have been permitted to amend their allegations and supplement the record. The parties stipulated to the fact that Pathway Data, Inc. is a citizen of Nevada and David Coulter is a citizen of California (Dkt. No. 117 at ¶ 6), but the Defendants disputed the citizenship of MidCap Media Finance, LLC ("MidCap"). The citizenship of an LLC is determined by the citizenship of all of its members,[1] thus the inquiry requires determining the citizenship of each member within the MidCap chain of membership on the date this suit was filed.[2] Following several months of jurisdictional discovery,[3] the Court narrowed the jurisdictional question down to one specific issue: whether the entity "Las Lomas Trust" was a member within the MidCap Media Finance, LLC ownership structure on January 23, 2015. *See* Dkt. No. 130.

---

[1] *See Settlement Funding, LLC v. Rapid Settlements, Ltd.*, 851 F.3d 530, 536 (5th Cir. 2017).

[2] Citizenship for the purposes of diversity jurisdiction is determined based on the date the action commenced. *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570 (2004). MidCap filed its original complaint on January 23, 2015. Dkt. No. 1.

[3] The undersigned's orders issued on October 4, 2019 and December 9, 2019 document in detail the nature of the discovery conducted. Dkt. Nos. 125 and 130.

On January 10, 2020, the Court held a final evidentiary hearing on this issue. After considering all of the evidence before it, the Court finds that the preponderance of the evidence demonstrates that when suit was filed (and continuing all the way through to the present) there was/is complete diversity of citizenship between the parties in this case, and the Court has subject matter jurisdiction over this dispute.

At the hearing, the Court heard the testimony of two witnesses—Joe Black, called by MidCap, and investigator Michael Collins, called by Pathway. Additionally, each side submitted a number of exhibits. Based on that evidence, the Court makes the following findings:

1. Joe Black is a lifelong resident of Atlanta, Georgia and a citizen of Georgia. Joe provided this information through a declaration under oath, (Dkt. No. 116-3) and his brother testified to this information at the evidentiary hearing. MidCap has also produced Joe Black's driver's license documenting his Georgia address. Dkt. No. 128-6. All of this evidence is undisputed, and Pathway offered no contrary evidence. The Court therefore finds that Joe Black was a citizen of Georgia on January 23, 2015.

2. Jeff Black has lived and worked in Austin, Texas since 2007 and is a citizen of Texas. Jeff testified to this information at the evidentiary hearing and previously through a declaration made under oath. Dkt. No. 116-2. MidCap has produced Jeff Black's driver's license documenting his Texas address. Dkt. No. 137-1. Once again, all of this evidence is undisputed, and Pathway offered no contrary evidence. The Court therefore finds that Jeff Black was a citizen of Texas on January 23, 2015.

3. MidCap submitted concrete evidence of its membership structure on January 23, 2015, the date suit was filed. The significant documentary evidence and testimony demonstrates that the

entities in the MidCap Media Finance, LLC structure ultimately all trace back to Jeff and Joe Black, individually. Dkt. No. 130. *See* Dkt. No. 137-3.

4. Specifically, the records show that on January 23, 2015, there were three entities upstream of MidCap Media Finance, LLC. *See* Dkt. No. 137-3. Those are:

(a) MidCap Media Finance, LLC (the Plaintiff) had two members: MidCap Management, LLC and MidCap Credit & Capital, LLC.

(b) MidCap Management, LLC's members were MidCap Credit & Capital, LLC and BlackCo Capital & Consulting, LLC.

(c) MidCap Credit & Capital, LLC's members were Jeff Black and BlackCo Capital & Consulting.

(d) BlackCo Capital & Consulting, LLC's members were Jeff and Joe Black.

Graphically, the structure on January 23, 2015 was:



3

As already noted, it is undisputed that on January 23, 2015, Jeff Black was a citizen of Texas, and Joe Black was a citizen of Georgia. Thus, the Court finds that at the time suit was filed, MidCap Media Finance, LLC was a citizen of Texas and Georgia.

5. The only factual argument Pathway has mustered to question these findings relates to an entity called the Las Lomas Trust, which for a time was a member of one of the upstream MidCap entities, MidCap Capital & Credit, LLC. During discovery after remand, Pathway aggressively sought to demonstrate that, notwithstanding documents indicating otherwise, the Las Lomas Trust might have maintained its ownership interest in MidCap Capital & Credit all the way through the time suit was filed. Specifically, in the first stages of discovery MidCap produced the agreement through which the Las Lomas Trust redeemed its membership, which stated it was "effective as of" January 1, 2014. This led Pathway to question what the actual closing date was, and whether the actual transfer of the Las Lomas Trust's membership might have taken place after this suit was filed on January 23, 2015 (making the Trust's citizenship relevant). The Court thus permitted additional discovery related to that question, the fruits of which were admitted, and testified to, at the evidentiary hearing. *See* Dkt. No. 137-2; Dkt. No. 138-1; Dkt. No. 138-3.

6. The undisputed evidence was that the Trust divested any membership interest in MidCap Capital & Credit months before the date suit was filed. Specifically, the following evidence clearly documents the actual date of redemption of the Trust's membership was August 1, 2014:

> (a) a document titled "Agreement for Redemption of Membership Interest" providing the terms of the redemption, and effective date of January 1, 2014. Dkt. No. 137-2 at 120.
>
> (b) two notarized, sworn affidavits of non-parties, dated April 21, 2014, stating that Jeff Black had been removed as Investment Trustee of the Trust. Dkt. No. 137-2 at 118, 133.

4

(c) a Wells Fargo wire transfer form called "Wire Transfer Activity Detail" dated August 1, 2014, documenting a transfer of funds from MidCap Capital & Credit, LLC to the Las Lomas Trust. The form also contains the notes "Repay Member loan" and "MCC Redempt LLT's Member Interest." Dkt. No. 137-2 at 117.

6. When these documents were produced during discovery, MidCap redacted the names of individuals (such as the beneficiary of the Trust), and the total consideration paid, to protect the Trust's settlors and beneficiaries' privacy, since that information was irrelevant to the jurisdictional analysis. Pathway objected to this, and tried to argue that the redactions cast doubt on MidCap's claim that the Trust had divested its interest in the MidCap entity prior to the date this suit was filed. The Court rejected those arguments and declined to compel the Trust or MidCap to provide the redacted names.[4]

7. Pathway continued to pursue this argument at the evidentiary hearing, specifically arguing that because the Redemption Agreement provides that the redemption of interest was conditioned on the Trust's receipt of the full redemption price, with the redaction it was impossible to conclude that the full amount was in fact transferred in the August 1, 2014 wire transfer. Dkt. No. 134 at 2-5. To end this argument once and for all, at the hearing MidCap disclosed not only the dollar figures but also the names that had previously been redacted.[5] The wire transfer form shows that the amount of funds wired is exactly the amount of consideration agreed to in the Redemption Agreement. Jeff Black testified that MidCap satisfied all conditions under the Redemption Agreement, including transmitting the entire amount of the redemption price and repayment of all outstanding loans, thus

---

[4] Dkt. No. 130 at 2-3.

[5] At the hearing, the parties both consented to, and the Court ordered, the sealing of the part of the record in which certain dollar amounts or non-party identities were discussed or reflected in the documents.

effectuating the redemption of the Trust's interests. He further testified that the Las Lomas Trust had no direct or indirect membership interest in any MidCap entity on January 23, 2015.

7. With regard to the individuals involved with the Trust, the evidence at the hearing demonstrated that, even if the Trust had not redeemed its interest in the MidCap entity in August 2014, the people involved in the Trust have no connection to California or Nevada. At the hearing, Jeff Black identified these non-parties, and explained their relation to the Black brothers and MidCap, as well as their citizenship. Nothing regarding the identities of these parties contradicts MidCap's representations about its membership structure or its citizenship, nor does it in any way suggest that, even if the Trust were considered in the citizenship analysis, it would destroy complete diversity here.[6]

8. In sum, Pathway's argument that the Las Lomas Trust may not have actually been removed from MidCap's chain of ownership prior to the filing of this suit is pure speculation and Pathway has produced no evidence to support the claim. There is ample evidence—both documentary and testimonial—demonstrating that the Las Lomas Trust redeemed its membership interest on August 1, 2014, effective as of January 1, 2014. The undisputed evidence therefore shows, and the Court finds, that the Las Lomas Trust was not in MidCap's membership structure on January 23, 2015.

9. Finally, Pathway's claim that it was not afforded an opportunity to conduct adequate discovery is insincere. The Court allowed Pathway an abundance of discovery. *See* Dkt. Nos. 119, 122, 125, 130. At the hearing, Pathway called a private investigator (Michael Collins) to testify. Collins' testimony regarding alleged discrepancies between MidCap's internal records and public

---

[6] Jeff Black testified that the Las Lomas Trust was not formed in California or Nevada and has no members that are citizens of either state.

filings has no relevance to the issue, as the Court has already explained. Dkt. No. 130 at 3-4. Though Pathway claimed Collins could not fully investigate MidCap's citizenship without more discovery, it failed to point to a single area where more discovery could impact the outcome. In fact, Collins conceded that in all the hours he spent investigating and reviewing documents, he never found any evidence linking MidCap to California or Nevada, nor did he find anything contradicting Jeff and Joe Black's testimony. And while Collins testified there were "Black" entities he was unable to review, he conceded he had no evidence those entities have anything to do with MidCap.

11. In short, there is no evidence creating doubt regarding who the members of MidCap Media Finance, LLC were on the date suit was filed, and there is definitive proof that MidCap was a citizen of Georgia and Texas on that date. As Pathway and Coulter already stipulated that when suit was filed they were citizens of Nevada and California, respectively, the Court finds that on January 23, 2015, complete diversity of citizenship existed between the parties.

Based on the above, the Court concludes that it has continuously had subject matter jurisdiction over the claims presented in this case. Having made these determinations as directed by the Fifth Circuit, the Court hereby directs the Clerk to transmit this order, and the record of proceedings from the date of the remand, July 31, 2019, to the current date back to the Fifth Circuit Court of Appeals.

SIGNED this 18th day of February, 2020.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE